UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 17-216 (DWF/KMM) |
| | Civil No. 21-1706 |
| Respondent-Plaintiff, | |
| v. | MEMORANDUM |
| | OPINION AND ORDER |
| James Marvin Reed, | |
| Petitioner-Defendant. | |

## INTRODUCTION

This matter is before the Court on Petitioner-Defendant James Marvin Reed's ("Reed") *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (Doc. Doc. No. 150 ("Motion to Vacate")), his self-styled motion to amend his Motion to Vacate (Doc. No. 152 ("Motion to Amend")), and his self-styled motion for an evidentiary hearing (Doc. No. 153 ("Motion for Evidentiary Hearing")) (collectively "Motions"). The United States of America (the "Government") opposes Reed's Motions. (Doc. No. 175 ("Govt. Opp.").) For the reasons set forth below, the Court respectfully denies Reed's Motions.[1]

---

[1] The Court notes that it granted Reed multiple extensions to file his Motion to Vacate. (Doc. Nos. 138, 142, 146, 149.) Therefore, the Court finds that Reed had ample time to research and submit his Motion to Vacate. Furthermore, the Court finds that any amendment to Reed's Motion to Vacate would be futile. Consequently, the Court respectfully denies Reed's Motion to Amend. Moreover, as discussed below, the Court finds that no evidentiary hearing is required in this case. Thus, the Court also denies Reed's Motion for Evidentiary Hearing.

## BACKGROUND

On May 4, 2017, Reed was charged in the U.S. District Court for the District of Columbia ("DDC") in a two-count indictment. (Doc. No. 171-1). Count One charged Reed with traveling in foreign commerce and engaging in both commercial and non-commercial illicit sexual conduct with Minor A between January to December 2007 in violation of 18 U.S.C. § 2423(c). (*Id.* at 1.) Count Two charged him with engaging in non-commercial illicit sexual conduct with Minor B while residing in the Philippines in 2016 in violation of Section 2423(c). (*Id.* at 2.) Reed moved to dismiss, arguing that both counts were unconstitutional, and that venue was improper. The DDC Judge dismissed Count Two but denied Reed's motion to dismiss Count One. The Government then moved to dismiss the DDC case and indict Reed in the District of Minnesota ("DMN"). The DDC District Judge discussed the implications of the dismissal, including the effect it would have on any venue-related arguments in Minnesota. (Doc. No. 175-2 at 11-14.) Reed indicated his understanding that by agreeing to a dismissal in DDC, he would forfeit any right to an improper venue claim in Minnesota. (*Id.* at 11-12.)

On August 23, 2017, Reed was indicted in the District of Minnesota on one count of traveling in foreign commerce and engaging in commercial and non-commercial illicit sexual conduct with Minor A in violation of 18 U.S.C. § 2423(c) between January to December 2007. (Doc. No. 1 ("Compl.").) In January 2018, Reed's Minnesota defense counsel filed numerous pretrial motions, including a Motion to Suppress (Doc. No. 45) and a Motion to Dismiss the Indictment (Doc. No. 46). (*See also* Doc. Nos. 40-44 (various other pretrial motions).)

On April 19, 2018, Reed pleaded guilty to the charge against him. (Doc. No. 92; *see also* Doc. No. 94 ("Plea Agreement").) Under the Plea Agreement, the parties agreed that Reed's sentence would not exceed 97 months.[2] (*Id.* ¶ 6.) The Plea Agreement also included a waiver of appeal and collateral attack. (*Id.* ¶ 12.) While the parties negotiated the Plea Agreement, Reed scheduled an elective surgery in advance of his potential confinement. (Doc. No. 174 ("Lopez Aff.") ¶ 8.) On April 13, 2018, Reed had minor surgery and was prescribed 20 tabs of oxycodone.[3]

During Reed's plea hearing, the Court asked whether Reed was under the influence of any narcotic that would prohibit him from proceeding with the Plea Agreement. (Doc. No. 119 ("Plea Hr'g Trans. at 4.) Reed responded, "I'm taking some pain medication, sir, for a recent surgery. But I feel fine and I don't feel that it's impaired me in any way." (*Id.*) Upon further inquiry into the nature of Reed's medication, Reed assured the Court that he was fully capable of understanding the hearing and making decisions. (*Id.* at 5.)

Reed further testified that he had sufficient time to consult with his counsel, he was satisfied with the services and representation his counsel provided, and that he was

---

[2]   A conviction under 18 U.S.C. § 2423(c) carries a statutory maximum penalty of life in prison. 18 U.S.C. § 2423(c).

[3]   The Government notes that "[i]f the Defendant took the medication as prescribed– 1 pill every four hours–he would have finished the prescription on April 16th. If 24 hours was calculated from 11 a.m. to 11 p.m., Defendant would have taken 6 pills (April 13-14), 6 pills (April 14-15), 6 pills (April 15-16) and 2 pills (April 16). In Defendant's Pro Se filing with the Eighth Circuit Court of Appeals, Defendant stated that he took the pills for 7 days after his surgery. Based on this statement, it appears he took the medication sporadically or 'as needed'." (Gov't Opp. at 3 n.2.)

3

not making any claim that he was innocent of traveling in foreign commerce and engaging in commercial and non-commercial illicit sexual conduct with a minor. (*Id.* at 3-4, 26-27.) Reed also stated his understanding that by pleading guilty, he waived his rights to bring other challenges to the Government's case, including alleged constitutional violations and any right to appeal. (*Id.* at 17-18.) The Court ultimately accepted Reed's guilty plea. (*Id.* at 27.)

Following his guilty plea, and consistent with similarly situated cases, the Court ordered a Presentence Report ("PSR") to be prepared by the United States Probation and Pretrial Services Office. (Doc. No. 125 ("PSR").) The PSR determined that Reed's base offense level was 24, and with various enhancements and reductions, his total offense level was 30. (PSR ¶¶ 27-41.) The PSR further determined that based on no criminal history, Reed was in a criminal history category of I, resulting in an effective advisory Guidelines' range of 97-121 months' imprisonment. (*Id.* ¶¶ 52, 129.)

Reed's counsel filed several objections to the PSR and advocated for a 24-month sentence. (Doc. No. 104; *see also* PSR at A.1-A.2.) The Court ultimately sentenced Reed to 72 months' imprisonment, to be followed by a 15-year supervised release. (Doc. No. 109.) The Court also ordered him to pay $6,000 in restitution at a rate of $600 "due on the fifteenth of the month to commence on July 1, 2018, until restitution has been paid in full." (*Id.* at 7.) Reed's counsel moved to lower the monthly amount. (Doc. No. 111.) The Court declined to lower the total restitution amount but did reduce the monthly rate

4

Reed was to pay on the fifteenth of the month to $500 per month.[4]  (Doc. No. 122 ("Revised Restitution Order").)

On June 19, 2018 Reed's counsel filed an appeal, arguing against the reasonableness of Reed's sentence.  (Doc. No. 112; *see also United States v. Reed*, No. 18-2375, Appellant Brief, Sept. 11, 2018.)  Reed also filed a *pro se* brief, arguing that his plea was not voluntary and raised speedy trial, venue, jurisdictional, and prosecutorial misconduct claims.  *United States v. Reed*, No. 18-2375, *Pro Se Motion*, Nov. 28, 2018.  The Eighth Circuit affirmed this Court's judgment on May 10, 2019.  *United States v. Reed*, 770 Fed. App'x 305, 306 (8th Cir. 2019).

The Eighth Circuit specifically rejected Reed's claim that his plea was involuntary.  *Id.* at 305 ("[T]he record shows that [Reed] assured the district court on several occasions that, despite his medications, he was not impaired; and he followed and responded appropriately throughout a detailed plea colloquy.").  The Eighth Circuit further observed that Reed "acknowledged during the plea hearing that he was giving up his right to a jury trial, that his plea was voluntary, and that he was satisfied with counsel."  *Id.*  Finally, the Eighth Circuit stated that "[a]lthough Reed challenges the factual basis of his guilty plea, he stipulated to facts necessary to convict him under the statutes charged."  *Id.* at 306.  Because Reed's guilty plea was valid, the Eighth Circuit found that his counsel's challenge to Reed's sentence was barred because it fell within

---

[4]  Based on the Court's Revised Restitution Order, Reed should have completed paying restitution by August 1, 2019.  As of November 22, 2021, Reed has paid only $925 and is in arrears in the amount of $5,075.  (Doc. No. 175-3.)  Reed now owes interest on the unpaid amount, in addition to the unpaid restitution.  (*Id.*)

5

the scope of his Plea Agreement's partial appeal waiver. *Id.* The Eighth Circuit also found that while Reed's challenges to speedy trial, venue, prosecutorial misconduct, and jurisdictional claims fell outside the scope of the appeal waiver, they were foreclosed by his guilty plea.[5] *Id.* Reed petitioned the United States Supreme Court for a writ of certiorari; however, his petition was denied on December 11, 2019. (Doc. No. 136.)

Reed filed the instant Motion to Vacate on July 26, 2021.[6] He cites the involuntariness of his plea, lack of jurisdiction, prosecutorial misconduct, and ineffective counsel as grounds for relief.[7] (Motion to Vacate at 4-29.) Reed also requests an evidentiary hearing. (Motion for Evidentiary Hearing.)

---

[5] The Eighth Circuit declined to address Reed's ineffective-assistance-of-counsel claim. *Reed*, 770 Fed. App'x at 306.

[6] Section 2255 actions have a one-year limitation period that runs from the latest of the date which: (1) the judgment of conviction becomes final; (2) the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. Reed requested, and the Court granted, a number of extensions to file his Motion to Vacate. (*See* Doc. Nos. 138, 142, 146, 149.) The Court therefore finds that Reed's Motion to Vacate is timely filed.

[7] With respect to ineffective counsel, Reeds claims that trial or appellate counsel: (1) "anticipated, orchestrated, and facilitated a narcotic impaired post-surgical plea change contract;" (2) "failed to provide Defendant advice that the Government's bottom range offer/exposure of '0 months' was a misrepresentation, unfulfillable, and impermissible sentence" for his charge; (3) "failed to appeal Defendant's conviction, and was extremely untimely in shepardinG [sic] the post-sentencing amended presentence report, providing partial discovery as late as December 2018, and replying to Defendant's written requests after nearly 115 days;" (4) "failed to advise Mr. Reed of the direct consequences of the Plea Agreement contract change" when he did not understand that

6

## DISCUSSION

Title 28, United States Code, Section 2255, provides that a prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence." In making such a motion, a § 2255 action requires a prisoner to show that he or she is entitled to such extraordinary relief because:

---

the change would "subject him and his family to the immigration components of the Adam Walsh Act and a conviction for a 'crime of violence;'" (5) failed to object to the "Government's misrepresentation to the Grand Jury and Naval Criminal Investigation Service that the Defendant traveled to the Philippines to engage in sex with minors" when they had information to the contrary; (6) "made an implied promise to a cognitively impaired Defendant that '0 months' imprisonment was a possible benefit of changing his plea;" (7) "neglected to investigate and present evidence regarding oxycodone;" (8) failed to "properly prepare and investigate the multiple avenues of evidence that Mr. Reed was one of three known victims of the same serial scammer," who negatively impacted his case; (9) failed to delay his guilty plea for one additional day when Reed would have completed his narcotics prescription; (10) failed to investigate the "accuser's third victim, Mr. Dupio, who impregnated the 'victim' while she was a minor, and provided her (victim) with fake high school and college diplomas;" (11) failed to object to "the five point enhancement for undue influence due to age disparity;" (12) failed to "discover that the Visiting Forces Agreement Article V, grants the Philippines exclusive jurisdiction over offenses by U.S. personnel under VFA, and failed to present evidence that Mr. Reed was not within the 'special maritime and territorial jurisdiction of the United States;'" (13) failed "to object to Minnesota as a venue as pass through airline stop;" (14) failed to effectively challenge jurisdiction; (15) failed to "present or investigate" Reed's claim that he loaned victim money; (16) "repeatedly withheld mitigating evidence from the Defendant and the Court;" (17) failed to analyze evidence and witnesses to show that Reed was innocent of the crime alleged; (18) failed to pursue any claim of innocence; (19) failed to communicate any defense strategies despite being asked; (20) failed to timely provide Defendant a copy of a Report and Recommendation so that he could have an opportunity to respond to it; (21) lied about the implications of his Plea Agreement including a waiver clause; (22) failed to request a hearing to contradict Government's evidence; (23) failed to investigate evidence linking accuser to other accusers and conspiring actors; (24) failed to object to known false claims in the PSR; (25) wrongly claimed that Reed assaulted his young daughter; and (26) failed to advise and inform Reed on a number of issues that made his Plea Agreement unconstitutional. (Motion to Vacate at 14-22, 26-29.)

7

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . .

28 U.S.C. § 2255(a).  If the court finds such a defect in sentencing, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).  A § 2255 request for relief "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice."  *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

A defendant may not use a § 2255 petition to relitigate issues that were decided against him on direct appeal, or that could have been raised on direct appeal but were not.  *English v. United States*, 998 F.2d 609, 612-13 (8th Cir. 1993); *Thompson v. United States,* 7 F.3d 1377, 1379 (8th Cir. 1993); *Reid v. United States*, 976 F.2d 446, 447 (8th Cir. 1992); *Ford v. United States*, 983 F.2d 897, 898-99 (8th Cir. 1993) (per curiam) (claims which could have been raised on direct appeal will not be considered in a section 2255 proceeding absent cause and substantial, actual prejudice).

Every criminal defendant has a constitutional right, guaranteed by the Sixth and Fourteenth Amendments, to effective counsel at trial and sentencing.  *Strickland v. Washington*, 466 U.S. 668, 706 (1984); *Wooten v. Norris*, 578 F.3d 767, 781 (8th Cir. 2009).  The Eighth Circuit follows the two-part *Strickland* test for reviewing claims of ineffective counsel; to succeed in his claim, Brumley must show that his attorney's

performance was unreasonably deficient, and that Brumley "suffered such prejudice from the deficient performance there is a reasonable probability the result would have been different." *Roundtree v. United States*, 751 F.3d 923, 925 (8th Cir. 2014).

In the context of a guilty plea, a defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Meza-Lopez v. United States*, 929 F.3d 1041, 1044 (8th Cir. 2019). If a defendant cannot prove prejudice, a court "need not address whether counsel's performance was deficient." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). To prevail on a claim for ineffective assistance of counsel under § 2255, a defendant must overcome a "heavy burden." *Apfel*, 97 F.3d at 1076.

The Court first observes that Reed waived his right to appeal and collaterally attack his conviction, including his right to petition under § 2255.[8] (Plea Agreement ¶ 12 ("Defendant expressly waives the right to petition under 28 U.S.C. § 2255;" *see also, United States v. Muratella*, 843 F.3d 780, 783 (8th Cir. 2016) (a valid guilty plea generally forecloses independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea), cert. denied, 137 S. Ct. 1605 (2017).) In his appeal, the Eighth Circuit found that Reed's waiver was valid and

---

[8] As discussed herein, the Court finds that Reed waived challenges to the reasonableness of his sentence, voluntariness of his plea, speedy trial, venue, jurisdiction, and prosecutorial misconduct. Neither Reed's waiver nor his guilty plea waived his claims against ineffective counsel. (Plea Agreement ¶ 12. ("[T]he waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.").)

enforceable with respect to challenging his sentence. *Reed,* 770 Fed. App. at 306. The Eight Circuit also noted that while Reed's speedy trial, venue, jurisdictional and prosecutorial misconduct claims were not subject to the Plea Agreement's waiver, they were foreclosed by Reed's guilty plea. *Reed,* 770 Fed. App. at 306 (citing *Muratella,* 843 F.3d at 783).) Therefore, the Court finds that all of Reed's claims for relief under § 2255, except for his ineffective counsel claims, are properly dismissed as waived pursuant to his Plea Agreement or guilty plea.[9]

Moreover, a careful review of the record before this Court shows that the facts do not support Reed's claims of ineffective assistance. First, while Reeds asserts a number of ineffective counsel claims, he does not show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted

---

[9] Even if the Court did not dismiss Reed's claims related to the reasonableness of his sentence, voluntariness of his plea, speedy trial, venue, jurisdiction, and prosecutorial misconduct as waived pursuant to his Plea Agreement or guilty plea, the Court would dismiss them because the Eighth Circuit already considered and rejected the same or similar issues on direct appeal. *English*, 998 F.2d 609 at 612-13; *Thompson*, 7 F.3d at 1379; *Reid*, 976 F.2d at 447; *Ford*, 983 F.2d at 898-99.

Here, each of the claims in the instant Motion to Vacate are issues that Reed raised or could have raised on direct appeal. Specifically, Reed's appeal included claims with respect to the reasonableness of his sentence, the voluntariness of his appeal, speedy trial, venue, prosecutorial misconduct, and jurisdiction. *Reed,* 770 Fed. App. at 306. The Eighth Circuit rejected Reed's claims. *Id.* Reed has not shown the cause and substantial, actual prejudice necessary to reconsider the claims he raised or could have raised on direct appeal. *Ford*, 983 F.2d at 898. Thus, to the extent Reed attempts to relitigate the same or similar issues in the instant Motion to Vacate, the Court finds that those claims are properly dismissed. *English*, 998 F.2d at 612-13.

For the reasons discussed below, the Court finds that Reed's claims of ineffective counsel fail for different reasons.

on going to trial." *Meza-Lopez*, 929 F.3d at 1044. Indeed, Reed has made no allegations of prejudice, and none of his claims, even if taken as true, support an inference that, but for his counsel's alleged errors, he would have gone to trial.

To the contrary, Reed's Plea Hr'g transcript clearly conveys that Reed understood the charges against him, agreed with the factual basis of the charge, and knowingly pleaded guilty after the Court fully and accurately advised him of the potential consequences of his plea. *See, e.g.*, *Matthews v. United States*, 114 F.3d 112, 114 (8th Cir. 1997) (finding it unnecessary to review alleged deficiency of counsel where record demonstrated defendant was fully advised of consequences of his plea and there was no indication defendant would not have pleaded guilty if counsel advised defendant of the same consequences). Moreover, Reed faced a statutory maximum sentence of life in prison with an effective advisory Guidelines' range of 97-121 months. The Plea Agreement that his counsel negotiated capped his sentence at 97 months and allowed counsel to advocate for an even lower sentence, thereby negating any reasonable probability that Reed would have proceeded to trial but for his counsel's actions. Because the Court finds that Reed cannot prove prejudice, it "need not address whether counsel's performance was deficient." *DeRoo*, 223 F.3d at 925.

Nevertheless, the Court also finds that Reed has failed to show that his counsel's performance was deficient. First, Reed's ineffective assistance claims are contradicted by his contemporaneous statements at his plea hearing. *See Nguyen v. United States*, 114 F.3d 699, 704 (8th Cir. 1997) (rejecting ineffective assistance claim where a defendant's "belated claim that his counsel had not represented him effectively is flatly contradicted

11

by his contemporaneous statements at the plea hearing that he was 'satisfied with the representation [he had] received' and that he 'believed' that his counsel had been a good lawyer"). During his plea hearing, when the Court asked Reed whether he was satisfied with his counsel's services and representation, Reed responded, "[v]ery satisfied, Sir." (Plea Hr'g Trans. at 4.)

Further, the Court finds that Reed's ineffective counsel allegations are simply not supported by the record. (*See generally* Lopez Aff.; *see also* Doc. No. 171 ("Aligada Aff.").) The record, including numerous pretrial motions, evidence of comprehensive investigative steps taken by Reed's counsel to produce a viable defense at trial, regular discussions with Reed before his decision to plead guilty, and objections to the PSR, conveys zealous advocacy and contradicts Reed's allegations that his counsel failed to investigate various aspects of his case; were unresponsive to his requests or took too long to respond; failed to make various objections, investigate or present certain claims or evidence or request a hearing to contradict evidence against him; misrepresented certain aspects of his Plea Agreement; or any other of Reed's many claims. (*See, e.g.*, Doc. Nos. 40-46; 66, 104; 111; 112; Aligada Aff; Lopez Aff.)

To the extent Reed challenges his counsel's assistance based on failure to properly advise him of the Adam Walsh Act and any collateral immigration consequences of his Plea Agreement, the Court notes that there was no requirement to do so. A defendant can make an intelligent and voluntary guilty plea satisfying due process so long as he is "fully aware of the direct consequences" of a guilty plea. *Brady v. United States*, 397 U.S. 742, 748 (1970). The requirements of Fed. R. Civ. P. 11 are also consistent with the principle

12

that due process only requires that defendants be advised of direct consequences. *See* Fed. R. Civ. P. 11 (listing various direct rights a defendant must be advised of prior to pleading guilty). A direct consequence is one that has "a definite, immediate and largely automatic effect on the range of the defendant's punishment." *United States v. Youngs*, 687 F.3d 56, 60 (2nd Cir. 2012). Here, the Court finds that any impact on immigration to third parties was a collateral consequence of Reed's Plea Agreement.

Courts have not addressed the collateral immigration consequences of the Adam Walsh Act; however, they have looked at the Adam Walsh Act's civil commitment rules and found that failing to advise a client of those consequences did not amount to ineffective assistance of counsel. *Id.* at 61 (district court did not violate due process or Rule 11 by accepting defendant's guilty plea without advising him of the civil commitment implications of Adam Walsh Act); *United States v. Blackledge*, 751 F.3d 188, 197 (4th Cir. 2014) (a person subject to commitment under the Adam Walsh Act does not have a right to effective assistance of counsel under the Sixth Amendment). Moreover, while counsel is required to advise a non-citizen client of the immigration consequences of a guilty plea, there is no such requirement to provide similar advice to a U.S. citizen. *See Padilla v. Kentucky*, 559 U.S. 356, 367 (2010). The Court thus finds that any impact on immigration to a third party was a collateral consequence of Reed's Plea Agreement and his counsel was not ineffective for failing to advise him on this issue.

Based on the entirety of the record, the Court simply cannot conclude that Reed received ineffective counsel when he has not shown that his attorney's performance was

unreasonably deficient or that he suffered prejudice in any way. *Roundtree*, 751 F.3d at 925.

The Court also concludes that based on the record before it, there is no reason for the Court to further explore any credibility issues with respect to Reed's claims. A § 2255 motion can be dismissed without a hearing when: (1) defendant's allegations, if accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact. *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995). The Court concludes that no evidentiary hearing is required in this case and therefore denies Reed's Motion for Evidentiary Hearing.

Finally, an appeal cannot be taken from a final order denying a motion under § 2255 without a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B)(2006); Fed. R. App. P. 22(b)(1). A court cannot grant a COA unless the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). The Court has considered whether the issuance of a COA is appropriate. In that context, the Court concludes that no issue raised is "debatable among reasonable jurists." *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994) (citing *Lozado v. Deeds*, 498 U.S. 430, 432 (1991) (per curiam)). Reed has not, therefore, made the "substantial showing of the denial of a constitutional right" necessary for the issuance of a COA. 28 U.S.C. § 2253(c)(2).

## CONCLUSION

As set forth above, the Court respectfully denies Reed's Motion to Vacate because he has failed to show ineffective assistance of counsel. The Court similarly denies Reed's Motion for Evidentiary Hearing because it concludes that no such hearing is required. The Court also finds that Reed has failed to show that issuance of a certificate of appealability is appropriate. Finally, the Court denies Reed's Motion to Amend because any amendment would be futile.

## ORDER

Based upon the presentations and submissions of the parties, the Court having carefully reviewed the entire procedural history and record in this matter, and the Court being otherwise duly advised in the premises, **IT IS HEREBY ORDERED** that:

1. Defendant James Marvin Reed's *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (Doc. No. [150]) is respectfully **DENIED**.

2. Defendant James Marvin Reed's *pro se* motion for leave to amend his motion pursuant to § 2255 (Doc. No. [152]) is respectfully **DENIED**.

3. Defendant James Marvin Reed's *pro se* motion for an evidentiary hearing (Doc. No. [153]) is respectfully **DENIED**.

4. No Certificate of Appealability will be issued to Defendant.

5. This matter is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: January 6, 2022

s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge